Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/06/2018 08:13 AM CST

In re Interest of Jaydon W. & Ethan W.,
children under 18 years of age.
State of Nebraska, appellee,
v. Mathew W., appellant.

___ N.W.2d ___

Filed February 20, 2018.    Nos. A-17-497, A-17-498.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Juvenile Courts: Jurisdiction: Appeal and Error.** In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
3. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken.
4. **Juvenile Courts: Parental Rights: Final Orders: Appeal and Error.** Juvenile court proceedings are special proceedings, and an order in a juvenile special proceeding is final and appealable if it affects a parent's substantial right to raise his or her child.
5. **Final Orders: Words and Phrases.** A substantial right is an essential legal right, not a mere technical right.
6. **Juvenile Courts: Parental Rights: Parent and Child: Time: Final Orders.** Whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed.
7. **Juvenile Courts: Judgments: Parental Rights.** A review order in a juvenile case does not affect a parent's substantial right if the court adopts a case plan or permanency plan that is almost identical to the plan that the court adopted in a previous disposition or review order.

- 563 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF JAYDON W. & ETHAN W.
Cite as 25 Neb. App. 562

8. **Juvenile Courts: Judgments: Appeal and Error.** A dispositional order which merely continues a previous determination is not an appealable order.

9. **Child Custody: Visitation: Final Orders: Appeal and Error.** Orders which temporarily suspend a parent's custody and visitation rights do not affect a substantial right and are therefore not appealable.

10. **Parental Rights.** The right of parents to maintain custody of their child is a natural right, subject only to the paramount interest which the public has in the protection of the rights of the child.

11. **Due Process.** The concept of due process embodies the notion of fundamental fairness and defies precise definition.

12. **Parental Rights: Due Process: Appeal and Error.** In deciding due process requirements in a particular case, an appellate court must weigh the interest of the parent, the interest of the State, and the risk of erroneous decision given the procedures in use. Due process is flexible and calls for such procedural protections as the particular situation demands.

13. **Child Custody: Parental Rights.** Under the parental preference principle, a parent's natural right to the custody of his or her child trumps the interests of strangers, including the State, to the parent-child relationship and the preferences of the child.

14. **Constitutional Law: Public Policy: Child Custody: Parental Rights.** Unless it has been affirmatively shown that a biological or adoptive parent is unfit or has forfeited his or her right to custody, the U.S. Constitution and sound public policy protect a parent's right to custody of his or her child.

15. **Constitutional Law: Parental Rights: Presumptions.** Absent circumstances which justify terminating a parent's constitutionally protected right to care for his or her child, due regard for the right requires that a biological or adoptive parent be presumptively regarded as the proper guardian for his or her child.

16. **Juvenile Courts: Parental Rights.** The parental preference doctrine is applicable even to an adjudicated child.

17. **Parental Rights: Proof.** Forfeiting the right to custody under the parental preference doctrine must be proved by clear and convincing evidence.

18. **Parental Rights.** Parental rights may be forfeited by a substantial, continuous, and repeated neglect of a child and a failure to discharge the duties of parental care and protection.

19. **Parental Rights: Proof.** Substantial, continuous, and repeated neglect of a child may be established by the complete indifference of a parent for a child's welfare over a long period of time.

- 564 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF JAYDON W. & ETHAN W.
Cite as 25 Neb. App. 562

20. **Child Custody: Parental Rights: Proof.** The initial burden of proving parental unfitness or forfeiture of a parent's right to custody is on the State.

21. **Constitutional Law: Parental Rights.** Whether termination of parental rights is in a child's best interests is not simply a determination that one environment or set of circumstances is superior to another, but it is instead subject to the overriding recognition that the relationship between parent and child is constitutionally protected.

22. **Parental Rights: Presumptions: Proof.** There is a rebuttable presumption that the best interests of a child are served by reuniting the child with his or her parent that is overcome only when the parent has been proved unfit or there has been a forfeiture.

23. **Child Custody: Parental Rights.** While the best interests of the child remain the lodestar of child custody disputes, a parent's superior right to custody must be given its due regard, and absent its negation, a parent retains the right to custody over his or her child.

24. ____: ____. A court may not deprive a parent of the custody of a child merely because the court reasonably believes that some other person could better provide for the child.

25. **Juvenile Courts: Minors.** The foremost purpose and objective of the Nebraska Juvenile Code is to promote and protect the juvenile's best interests, and the juvenile code must be construed to assure the rights of all juveniles to care and protection.

Appeal from the County Court for Platte County: Frank J. Skorupa, Judge. Reversed and remanded with directions.

Susanne M. Dempsey-Cook for appellant.

Breanna Anderson, Deputy Platte County Attorney, for appellee.

Eugene G. Schumacher, of Sipple, Hansen, Emerson, Schumacher & Klutman, guardian ad litem.

Pirtle, Riedmann, and Arterburn, Judges.

Riedmann, Judge.

## INTRODUCTION

Mathew W. appeals the orders of the county court for Platte County, sitting as a juvenile court, which denied his motion for custody of his minor children who had been adjudicated

- 565 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF JAYDON W. & ETHAN W.
Cite as 25 Neb. App. 562

under Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2013) as to their mother. Mathew argues that the court erred in concluding that he had forfeited his right to custody. We agree, and therefore, we reverse the order of the juvenile court and remand the cause with directions consistent with this opinion.

## BACKGROUND

Mathew is the father of the two children at issue here: Jaydon W., born in July 2008, and Ethan W., born in September 2009. Mathew and the children's mother, Kylee M., were married in 2000 and divorced in 2007; however, they attempted to coparent the boys until Ethan was around 18 months old. Mathew remained in Columbus, Nebraska, where Kylee and the boys have continuously resided, until 2012 or 2013, describing himself as the "primary parent" of the children during that time. In June 2013, Kylee obtained a protection order which prohibited Mathew from having contact with her or the boys. Because of the protection order, Mathew moved to Georgia for several months and stopped paying child support during that time. Once the order expired, around June 2014, Mathew returned to Nebraska and resided in Omaha.

Jaydon and Ethan were removed from Kylee's care in August 2013 and adjudicated under § 43-247(3)(a) in November. They were placed in a foster home at that time. According to Mathew, at some point after August, he became aware that the children were in the custody of the State and attempted to contact the State on numerous occasions, but he was apparently unsuccessful, and as he noted, he was unable to have contact with the children until June 2014 due to the protection order. Between February 2015 and February 2016, however, Kylee would try to talk with Mathew at least four or five times per week and would take the children to visit him at his home in Omaha at least twice per month when they would all spend the night at his house.

On August 31, 2015, Jaydon and Ethan were placed back in Kylee's home, but they were removed again on October 15 due to allegations of physical abuse by Kylee's husband. When

- 566 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF JAYDON W. & ETHAN W.
Cite as 25 Neb. App. 562

Mathew learned that the children had been removed from Kylee's care again, he called the Department of Health and Human Services (DHHS) and asked to become involved in the case. Beginning that month, Mathew was permitted supervised visits with the children twice per week, traveling from Omaha to Columbus for a weekday visit and having the boys visit his home on Saturdays.

In January 2016, Mathew filed a motion for custody in which he requested that the court issue an order placing custody of the children with him. The State objected to the motion because Mathew had just recently become involved in the case and because placing the children with Mathew would require another move for the children. The current and former DHHS caseworkers testified at the hearing on the motion that they each believed that a longer transition period was preferable to allow the children to rebuild their relationship with Mathew before granting him custody of the boys. Kylee testified that she did not object to Mathew's motion and that despite having obtained protection orders against Mathew in the past, she opined that the children would not be in danger if they lived with him. After the hearing, the juvenile court entered an order denying Mathew's motion.

Thereafter, Mathew was allowed overnight visits on the weekends in addition to his weekday visits. During that time period, the boys were also having separate visits with Kylee twice per week. Unfortunately, both boys began displaying significantly increased behaviors during that time, so in May 2016, the court suspended all visitation with both parents. Psychological evaluations were then completed on Kylee, Mathew, Jaydon, and Ethan. Jaydon's evaluation recommended "Parent-Child Interactive Therapy" (PCIT) for him with Kylee and separately with Mathew. Because the case plan goal remained reunification with Kylee, DHHS elected to focus on her and initially arranged PCIT for just her and Jaydon. Jaydon began acting out, however, and therapy was placed on hold pending Kylee's evaluation.

- 567 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF JAYDON W. & ETHAN W.
Cite as 25 Neb. App. 562

Mathew's psychological evaluation and parenting risk assessment was completed over the course of several days in September and October 2016 with a psychologist. The psychologist diagnosed Mathew with adult attention deficit hyperactivity disorder, and he found that Mathew showed "significant defensiveness" and "was guarded in any personal wrong doings involving his children" and displayed "some antisocial, narcissistic, and turbulent" personality traits. However, Mathew was not diagnosed with a personality disorder, and the psychologist was supportive of PCIT for Mathew and the children and recommended that Mathew be "brought up to speed" on the children's individual needs.

In April 2017, Mathew filed a second motion for custody of the children. By that time, Mathew had moved to Columbus in order to be closer to the children, had his own residence, and was employed full time. He had resumed paying child support and was attempting to "catch up" on the arrearage. DHHS continued to object to placing the children with Mathew, claiming that allowing the boys to remain in their foster home would be in their best interests. The caseworker testified at the hearing that the boys' behaviors immediately and significantly improved after visitation with both parents was suspended in May 2016 and that although there was a slight regression by Jaydon in November or December when PCIT with Kylee began, both boys exhibited much better behavior during the 2016-17 school year than they had in the spring of 2016.

In a subsequent order, the juvenile court denied Mathew's motion for custody. The court noted that visitation had been suspended in May 2016 because of the children's behavior and that the cause of the behavioral issues had not yet been resolved or adequately addressed. Thus, the court instructed DHHS "to immediately and as quickly as possible address those matters by way of [any necessary] assessments." Pending those assessments, Mathew's motion for custody was denied. Mathew timely appeals to this court.

- 568 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF JAYDON W. & ETHAN W.
Cite as 25 Neb. App. 562

## ASSIGNMENT OF ERROR

Mathew assigns that the juvenile court violated his due process rights and erred in denying his motion for custody of the children.

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Sloane O.*, 291 Neb. 892, 870 N.W.2d 110 (2015).

## ANALYSIS

*Jurisdiction.*

Pursuant to this court's request, the parties' briefs addressed the issue of whether the juvenile court's April 2017 order denying Mathew's motion for custody was a final, appealable order. The State and the guardian ad litem contend that the court's order did not affect a substantial right and was a temporary order, and, as such, it was not a final, appealable order and this court lacks jurisdiction over this appeal. Conversely, Mathew contends that the order does affect a substantial right and that therefore, it is final and appealable.

[2-4] In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015). For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken. *Id.* Juvenile court proceedings are special proceedings, and an order in a juvenile special proceeding is final and appealable if it affects a parent's substantial right to raise his or her child. See *id.* Thus, if the juvenile court's order denying Mathew's motion for custody of the children affected his substantial right to raise Jaydon and Ethan, the order was final and appealable. But if the order did not affect a substantial right, we lack jurisdiction and must dismiss the appeal.

- 569 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF JAYDON W. & ETHAN W.
Cite as 25 Neb. App. 562

[5-8] A substantial right is an essential legal right, not a mere technical right. *In re Interest of Octavio B. et al., supra*. Whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed. *Id*. A review order does not affect a parent's substantial right if the court adopts a case plan or permanency plan that is almost identical to the plan that the court adopted in a previous disposition or review order. *Id*. Thus, a dispositional order which merely continues a previous determination is not an appealable order. *Id*.

The question here is whether the denial of Mathew's April 2017 motion was merely a continuation of the denial of his January 2016 motion. We conclude it was not. At the time Mathew first moved for custody of the children, he had just recently become part of the case and begun formal visitation with the children. In denying the motion, the court noted that Mathew waited more than 2 years before participating in the case. In addition, the court observed that placing the children with Mathew would entail removing the children from their community and locating new health care providers, while the permanency plan remained reunification with Kylee who continued to reside in Columbus.

At the time Mathew filed his second motion, however, he had moved to Columbus and had been participating in the case for more than 2 years. By that time, he had been permitted visitation, including overnights, and had completed a psychological evaluation and parenting risk assessment, which supported his participation in PCIT with the children. As a result, the juvenile court had different factors to consider when assessing Mathew's second motion, and some of the concerns expressed in the order denying Mathew's first motion had been alleviated by April 2017, namely, Mathew had moved to the children's community and had gradually been transitioning to playing a larger role in their lives. Therefore, we conclude

- 570 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF JAYDON W. & ETHAN W.
Cite as 25 Neb. App. 562

that the order from which Mathew has appealed was not a mere continuation of a prior order.

The State additionally asserts that this court lacks jurisdiction over the appeal because the order from which the appeal was taken was "temporary in nature." Brief for appellee at 12. We disagree.

[9] Whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed. *In re Interest of Danaisha W. et al.*, 287 Neb. 27, 840 N.W.2d 533 (2013). Orders which temporarily suspend a parent's custody and visitation rights do not affect a substantial right and are therefore not appealable. *Id*. In *In re Interest of Danaisha W. et al., supra*, the Nebraska Supreme Court held that an order imposing restrictions on a parent's visitation rights was temporary in nature and therefore did not affect a substantial right so as to be appealable when it was in effect only until the scheduled hearing on a motion to terminate parental rights, which was to be held approximately 5 weeks later.

To the contrary, in *In re Interest of Cassandra B. & Moira B.*, 290 Neb. 619, 861 N.W.2d 398 (2015), the juvenile court's order prohibited a parent from homeschooling one of the children, pending further order of the court. On appeal, the Supreme Court noted that the juvenile court's order gave no indication that the court would revisit the issue prior to the next review hearing which was scheduled for approximately 6 months in the future. The Supreme Court also observed that because juvenile courts are statutorily required to review the cases of adjudicated juveniles every 6 months, virtually no order would have a longer duration than that. The court therefore concluded that the order was not temporary in nature and was a final, appealable order.

We conclude that the instant case is more akin to *In re Interest of Cassandra B. & Moira B., supra*, than to *In re*

- 571 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF JAYDON W. & ETHAN W.
Cite as 25 Neb. App. 562

*Interest of Danaisha W. et al., supra.* Here, the juvenile court's order denied Mathew's motion for custody of the children pending assessments to determine the cause of their behavioral issues. The order instructed DHHS to complete the necessary assessments, and there was no indication of the timeframe by which the assessments would be completed. This is particularly relevant given that visitation had been suspended since May 2016, and by April 2017, a cause had yet to be determined and visitation remained suspended. Thus, it does not appear that the cause of the children's behaviors is an issue that can be quickly determined and resolved.

Additionally, there was no indication that Mathew had any control over when the assessments could be completed or had the power to gain custody of the children before the next scheduled review hearing. See *In re Interest of Nathaniel P.*, 22 Neb. App. 46, 846 N.W.2d 681 (2014) (order suspending mother's right to direct child's education was temporary in nature because mother had power to regain her rights before next scheduled review hearing). We therefore conclude that the denial of Mathew's motion for custody was of sufficient duration as to render the order final and appealable. As a result, this court has jurisdiction to consider the merits of Mathew's argument.

*Motion for Custody.*

Mathew argues that the juvenile court violated his due process rights and erred when it denied his motion for custody of the children without sufficient evidence proving that he had forfeited his right to custody. We agree.

[10-12] The right of parents to maintain custody of their child is a natural right, subject only to the paramount interest which the public has in the protection of the rights of the child. *In re Interest of Sloane O.*, 291 Neb. 892, 870 N.W.2d 110 (2015). The concept of due process embodies the notion of fundamental fairness and defies precise definition. *Id*. In deciding due process requirements in a particular case, we

- 572 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF JAYDON W. & ETHAN W.
Cite as 25 Neb. App. 562

must weigh the interest of the parent, the interest of the State, and the risk of erroneous decision given the procedures in use. *Id*. Due process is flexible and calls for such procedural protections as the particular situation demands. *Id*.

[13-16] Under the parental preference principle, a parent's natural right to the custody of his or her child trumps the interests of strangers, including the State, to the parent-child relationship and the preferences of the child. *Id*. Therefore, unless it has been affirmatively shown that a biological or adoptive parent is unfit or has forfeited his or her right to custody, the U.S. Constitution and sound public policy protect a parent's right to custody of his or her child. *Id*. Absent circumstances which justify terminating a parent's constitutionally protected right to care for his or her child, due regard for the right requires that a biological or adoptive parent be presumptively regarded as the proper guardian for his or her child. *Id*. The doctrine is applicable even to an adjudicated child. *Id*.

[17] There are no allegations in the present case that Mathew is unfit to have custody of the children. Therefore, the question before us is whether the State proved by clear and convincing evidence that Mathew forfeited his right to custody. See *In re Interest of Lakota Z. & Jacob H.*, 282 Neb. 584, 804 N.W.2d 174 (2011) (proof of parental unfitness or forfeiture of right to custody requires proof by clear and convincing evidence). The juvenile court's conclusion in April 2017 that there had been a forfeiture was based primarily on the time period of August 9, 2013 (the filing of the petition against Kylee), to December 2015 (the date Mathew's visitation was ordered).

[18-20] Generally, parental rights may be forfeited by a substantial, continuous, and repeated neglect of a child and a failure to discharge the duties of parental care and protection. *In re Guardianship of Robert D.*, 269 Neb. 820, 696 N.W.2d 461 (2005). Substantial, continuous, and repeated neglect of a child may be established by the complete indifference of a parent for a child's welfare over a long period of time. See *id*. The initial

- 573 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF JAYDON W. & ETHAN W.
Cite as 25 Neb. App. 562

burden of proving parental unfitness or forfeiture of a parent's right to custody is on the State. See *In re Interest of Lilly S. & Vincent S.*, 298 Neb. 306, 903 N.W.2d 651 (2017).

In the instant case, we note that the State argues that the juvenile court properly denied Mathew's motion for custody, because refusing to move the children from their current foster home into Mathew's home was in the children's best interests—they have lived in their foster home for nearly 4 years, are bonded to their foster parents, and have "consistency and stability" there. Brief for appellee at 17. However, this type of analysis does not come into play until after there has been a finding of parental unfitness or forfeiture. See *In re Interest of Lakota Z. & Jacob H., supra*.

[21,22] Although the name of the best interests of the child standard may invite a different intuitive understanding, the standard does not require simply that a determination be made that one environment or set of circumstances is superior to another. *Id*. Rather, the best interests standard is subject to the overriding recognition that the relationship between parent and child is constitutionally protected. *Id*. There is a rebuttable presumption that the best interests of a child are served by reuniting the child with his or her parent. *Id*. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the parent has been proved unfit or there has been a forfeiture. See *id*.

[23,24] Additionally, while the best interests of the child remain the lodestar of child custody disputes, a parent's superior right to custody must be given its due regard, and absent its negation, a parent retains the right to custody over his or her child. *In re Guardianship of D.J.*, 268 Neb. 239, 682 N.W.2d 238 (2004). In other words, a parent retains the right to custody unless it is proved that the parent is unfit or has forfeited his or her right to custody. A court may not deprive a parent of the custody of a child merely because the court reasonably believes that some other person could better provide for the child. *In re Interest of Lilly S. & Vincent S., supra*. Stated another way,

- 574 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF JAYDON W. & ETHAN W.
Cite as 25 Neb. App. 562

"the fact that the State considers certain prospective adoptive parents 'better' [does not] overcome the constitutionally required presumption that reuniting with [a parent] is best." *In re Interest of Xavier H.*, 274 Neb. 331, 350, 740 N.W.2d 13, 26 (2007). The court has never deprived a parent of the custody of a child merely because on financial or other grounds a stranger might better provide. *In re Interest of Xavier H., supra.*

Thus, in the instant case, the initial question is not whether the children's best interests are served by remaining in their current foster home because it would be "'better'" for them, but, rather, whether the presumption that their best interests are served by reuniting with Mathew has been rebutted by clear and convincing evidence that Mathew is unfit or has forfeited his right to custody. See *id.* at 350, 740 N.W.2d at 26. As noted above, there are no allegations that Mathew is unfit and the juvenile court made no such finding. Accordingly, we must determine whether the State produced clear and convincing evidence that Mathew substantially, continuously, and repeatedly neglected the children and failed to discharge the duties of parental care and protection. We conclude that the evidence falls short of this standard.

In support of its argument that the evidence supports a finding that Mathew forfeited his right to custody, the State continually references the "28 months" that Mathew failed to participate in the case, referencing the time period from August 2013, when the children were removed from Kylee's care, until December 2015, when Mathew first appeared in this case. See brief for appellee at 17, 22, and 24. We initially observe that there was a protection order in place until June 2014, prohibiting Mathew from having contact with the children. The record is unclear as to what contact, if any, Mathew had with the children after the expiration of the protection order, but Mathew's uncontroverted testimony established that he attempted, unsuccessfully, to contact the State on many occasions regarding the children. And at least as early as February 2015, Kylee and Mathew were speaking by telephone several

- 575 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF JAYDON W. & ETHAN W.
Cite as 25 Neb. App. 562

times per week and Kylee regularly took the children to visit him at his home in Omaha. Thus, Mathew was having consistent contact with the children during that time.

The children were placed back with Kylee in August 2015, and then once Mathew learned they had been removed again in October, he contacted DHHS and began participating in the case. Since that time, Mathew has driven to Columbus from Omaha to participate in visitation, made himself available for visits with the children at his residence, and completed a psychological evaluation and parenting risk assessment. We note that despite Mathew's efforts, DHHS has repeatedly elected to focus on Kylee, rather than Mathew, because the goal of the case remained reunification with her. Thus, despite Jaydon's psychological evaluation recommending PCIT with Mathew, the psychologist's support for Mathew's participation in PCIT, and the juvenile court's scheduling a review hearing for January 2017 in order to assess the progress being made in PCIT for *both* Kylee and Mathew, DHHS has never even attempted to begin PCIT between Mathew and either child. Nor had DHHS scheduled a bonding assessment to be completed between Mathew and the children, as it had done for Kylee and the children, despite affirming that it could have done so in order to evaluate the relationship between Mathew and the boys and gain recommendations for strengthening their bond. As it stood, at the April 2017 hearing on Mathew's motion for custody, Mathew had not had significant visitation with the children since May 2016 through no fault of his own. Yet at that time, the court was still instructing DHHS to determine the cause of behavioral issues that peaked 11 months earlier.

Further, Mathew acknowledged that when he moved to Georgia, he stopped paying child support and fell behind on his obligation. Thus, he served 11 days in jail in October 2015 as a result. However, at the time of his psychological evaluation, he had resumed paying his child support obligation and was attempting to "catch up" on the arrearage.

- 576 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF JAYDON W. & ETHAN W.
Cite as 25 Neb. App. 562

In short, upon our de novo review of the record, we cannot find clear and convincing evidence of a long-term complete indifference toward the children. See *In re Guardianship of Robert D.*, 269 Neb. 820, 696 N.W.2d 461 (2005). See, also, *In re Guardianship of D.J.*, 268 Neb. 239, 682 N.W.2d 238 (2004); *Gray v. Hartman*, 181 Neb. 590, 596, 150 N.W.2d 120, 123 (1967) ("forfeiture of parental rights may be effected by the indifference of a parent for a child's welfare over a long period of time"); *Raymond v. Cotner*, 175 Neb. 158, 163, 120 N.W.2d 892, 895 (1963) (forfeiture established by parent's "complete indifference" to child's welfare and finding father had not forfeited right to custody despite not having visited the child for 9 years), *overruled on other grounds, Bigley v. Tibbs*, 193 Neb. 4, 225 N.W.2d 27 (1975), *overruled on other grounds, Nielsen v. Nielsen*, 207 Neb. 141, 296 N.W.2d 483 (1980). While Mathew's own actions caused Kylee to seek a protection order, thereby preventing him from having contact with the boys for 1 year, and he certainly could have made a more significant effort upon expiration of the protection order, we cannot find that the evidence clearly and convincingly establishes circumstances which justify terminating Mathew's constitutionally protected right to care for his children; and absent such circumstances, he is presumptively regarded as the proper guardian for his children. See *In re Interest of Lilly S. & Vincent S.*, 298 Neb. 306, 903 N.W.2d 651 (2017).

We understand the juvenile court's reluctance to uproot the children from their long-term foster home, especially given their recent behavioral concerns. However, the question is not whether the children's best interests would be served by placing their custody with Mathew. Mathew enjoys a constitutional right to custody of Jaydon and Ethan that may be disrupted only upon a finding that he is unfit or has forfeited his right to custody. Finding neither, we conclude that the juvenile court erred in denying the motion for custody.

[25] That is not to say, however, that the juvenile court is required to order that the children be turned over to Mathew

- 577 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF JAYDON W. & ETHAN W.
Cite as 25 Neb. App. 562

immediately. As stated above, the children were adjudicated in November 2013 based upon acts of Kylee. As adjudicated children, the juvenile court has jurisdiction over them pursuant to § 43-247(3). And although the parental preference doctrine applies to adjudicated children, the "foremost purpose and objective of the Nebraska Juvenile Code is to promote and protect the juvenile's best interests, and the juvenile code must be construed to assure the rights of all juveniles to care and protection." *In re Interest of Veronica H.*, 272 Neb. 370, 375, 721 N.W.2d 651, 654 (2006). Given the length of separation between Mathew and the children and the length of time they have resided with their foster parents, it is in the best interests of the children to implement a transition plan before returning them to Mathew's physical custody. Accordingly, we reverse the order and remand the cause with directions to the juvenile court to grant the motion and order implementation of a transition plan to effectuate placement of the children with Mathew.

## CONCLUSION

We find that the order from which the appeal was taken was a final, appealable order and that thus, this court has jurisdiction over the appeal. Upon our de novo review of the record, we conclude that the State failed to adduce clear and convincing evidence that Mathew was either unfit or forfeited his right to custody of the children. We therefore reverse the order of the juvenile court and remand the cause with directions consistent with this opinion.

Reversed and remanded with directions.