Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/28/2018 08:14 AM CDT

IN RE INTEREST OF PAXTON H., A CHILD
UNDER 18 YEARS OF AGE.
NEBRASKA DEPARTMENT OF HEALTH AND HUMAN
SERVICES, APPELLANT, V. PATRICK H.
AND PENNY H., APPELLEES.

___ N.W.2d ___

Filed July 6, 2018.     No. S-17-1182.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings.
2. **Juvenile Courts: Jurisdiction: Appeal and Error.** In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
3. **Juvenile Courts: Costs: Final Orders.** An order in a juvenile case which directs the Department of Health and Human Services to pay for the costs of treatment is a final order for purposes of Neb. Rev. Stat. § 25-1902 (Reissue 2016).
4. **Juvenile Courts.** Juvenile courts have the authority to assent to and dissent from decisions of the Department of Health and Human Services with respect to what care, placement, services, and expenditures are in the best interests of juveniles under its care and custody.
5. **Appeal and Error.** Appellate courts will not consider issues on appeal that were not presented to or passed upon by the trial court.

Appeal from the Separate Juvenile Court of Lancaster County: TONI G. THORSON, Judge. Affirmed.

Douglas J. Peterson, Attorney General, and C.J. Roberts, Special Assistant Attorney General, for appellant.

Lisa Gonzalez, of Johnson & Pekny, L.L.C., for appellees.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, and PAPIK, JJ., and JOHNSON, District Judge.

PAPIK, J.

The separate juvenile court of Lancaster County ordered the Nebraska Department of Health and Human Services (DHHS) to arrange and pay for Paxton H., a juvenile in its care and custody, to receive mental health services at a facility in Kansas. DHHS challenges that order. While DHHS acknowledges that Paxton requires certain services, it contends that Paxton can receive those services in Nebraska and that local services would better serve his needs. Following our de novo review of the record, we determine that the juvenile court's order was in Paxton's best interests, and we therefore affirm.

## BACKGROUND

In the sections below, we set forth how Paxton came into the custody of DHHS and the circumstances that led to the order at issue in this appeal.

*Paxton's Placement in DHHS Custody.*

On December 29, 2014, the State of Nebraska filed a petition alleging that Paxton, then 11 years old, was without proper support through no fault of his parents and therefore was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2014). Following a hearing, the juvenile court adjudicated Paxton as a child within the meaning of § 43-247(3)(a).

In its adjudication order, the juvenile court noted Paxton's diagnoses of posttraumatic stress disorder, attention deficit hyperactivity disorder, traumatic brain injury, disruptive mood dysregulation disorder, and reactive attachment disorder. The juvenile court found that Paxton had been placed outside the family home more than once due to assaultive, defiant, and destructive behaviors that his parents could not control. It

further found that Paxton had recently returned to the family home from a residential treatment facility and, upon his return, resumed his assaultive behavior. The juvenile court determined that Paxton's parents could not safely maintain him in their home or provide the treatment and services he needed. The juvenile court ordered DHHS to maintain Paxton in its care and custody, pending placement at a psychiatric residential treatment facility.

*Paxton's Placements at*
*KidsTLC in Kansas.*

As a result of disruptions at past placements, no residential treatment facility in Nebraska would accept Paxton, but KidsTLC, a residential treatment facility in Olathe, Kansas, would. Paxton was admitted there in January 2015. Although the record does not disclose Paxton's discharge date, it appears that he remained at KidsTLC for about a year.

Just a few months after returning to his parents' home from KidsTLC, Paxton was again removed due to aggressive behaviors. After placements in multiple foster homes and in respite care, Paxton was returned to KidsTLC in July 2016.

*July 2017 Review Hearing.*

In July 2017, the juvenile court conducted a review hearing. Paxton was still at KidsTLC at this point, but Laura Milburn, Paxton's DHHS caseworker, testified at the hearing that he was having home visits with his parents almost every other week and that these visits were going well. She stated that KidsTLC recommended that Paxton transition to his parents' home in August 2017.

Milburn acknowledged that DHHS accepted the recommendations of a recent psychological evaluation of Paxton. This evaluation recommended that Paxton receive various services and treatment including regular meetings with a physician and psychiatrist to manage his psychotropic medications as well as individual psychotherapy. Milburn also

acknowledged that, if Paxton were discharged to his parents' home, he would need services at school, individual therapy, and weekly bloodwork to monitor his medications, as well as other services. While Milburn had initiated the processes to obtain some of these services, none of them were in place for Paxton at the time of the July 2017 hearing.

In its order following the July 2017 hearing, the juvenile court approved DHHS' case plan, as modified. In particular, the juvenile court ordered Paxton's transition home upon discharge from KidsTLC. The juvenile court ordered DHHS "to ensure that necessary services are available to Paxton . . . immediately upon his discharge to the family home." The juvenile court went on to provide a nonexclusive list of necessary services consistent with the recent psychological evaluation.

*Dispute Regarding*
*Paxton's Care.*

Paxton was discharged from KidsTLC to his parents' home on September 30, 2017. Shortly thereafter, a dispute arose between Paxton's parents and DHHS regarding his care. Paxton's parents asked DHHS to arrange for Paxton to periodically travel to and participate in a transition program at KidsTLC. Paxton's therapist during his time at KidsTLC believed that Paxton's participation would smooth his transition home and assist him in remaining there. DHHS refused to arrange for participation in the KidsTLC transition program. DHHS personnel concluded that Paxton and his family should utilize services in Nebraska, rather than services multiple hours away in Kansas.

Paxton's parents then filed a motion for an order directing DHHS to arrange and pay for him to participate in the KidsTLC transition program. The juvenile court held a hearing on that motion on October 10, 2017. At the hearing, Milburn acknowledged that DHHS had declined to provide the KidsTLC services requested by Paxton's parents

and recommended by his therapist. She testified that DHHS regarded respite providers in Nebraska to be more suitable for Paxton's transition. Milburn conceded, however, that DHHS had not provided services immediately upon Paxton's discharge, as ordered by the juvenile court. She also admitted that Paxton's Medicaid had not yet been activated and that as a result, Paxton could not see the therapist his parents had identified to work with him, obtain a refill of his medication, or see a psychiatrist concerning his medication. Milburn acknowledged that Paxton had not received any type of therapy in the 11 days since his discharge from KidsTLC.

At the close of the hearing, the juvenile court observed that DHHS had not presented any viable alternative to the KidsTLC transition program. The juvenile court noted that it did not have information as to how long Paxton would need services at KidsTLC, but that it was "in everyone's best interest" that Paxton eventually receive services in Nebraska.

In an order entered on October 11, 2017, the juvenile court found that it was in Paxton's best interests to participate in the KidsTLC transition program and ordered that DHHS immediately arrange and pay for him to do so. It observed that DHHS had not provided an alternative plan and that such a plan was "critical" given previous failed transitions home as a result of a gap in services. While directing Paxton's participation in the KidsTLC transition program, the juvenile court indicated that it would continue to monitor services provided to Paxton and review whether participation in the KidsTLC transition program was necessary. The juvenile court scheduled a review hearing for January 2018 and added that the review hearing could be advanced upon request of the parties. DHHS then filed this appeal.

### ASSIGNMENT OF ERROR

DHHS assigns, rephrased, that the juvenile court erred in ordering DHHS to arrange and pay for Paxton to participate in the KidsTLC transition program.

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Josue G.*, 299 Neb. 784, 910 N.W.2d 159 (2018).

## ANALYSIS

*Jurisdiction.*

[2,3] Before reaching the merits of DHHS' appeal, we pause to confirm our jurisdiction to do so. In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *In re Interest of Becka P. et al.*, 296 Neb. 365, 894 N.W.2d 247 (2017). Neb. Rev. Stat. § 43-2,106.01(1) (Reissue 2016) gives appellate courts jurisdiction to review "[a]ny final order or judgment entered by a juvenile court." We have held that an order directing DHHS to pay for the costs of treatment is a final order for purposes of Neb. Rev. Stat. § 25-1902 (Reissue 2016). See, *In re Interest of J.M.N.*, 237 Neb. 116, 464 N.W.2d 811 (1991); *In re Interest of B.M.H.*, 233 Neb. 524, 446 N.W.2d 222 (1989), *citing In re Interest of G.B., M.B., and T.B.*, 227 Neb. 512, 418 N.W.2d 258 (1988). We thus have jurisdiction here.

*Merits of DHHS' Appeal.*

Turning now to the merits, DHHS argues that the juvenile court erred in ordering DHHS to arrange and pay for Paxton to participate in a transition program at KidsTLC following his discharge. DHHS contends that it is not in Paxton's best interests to participate in a transition program several hours from his parents' home. Instead, DHHS asserts that it would be better for Paxton to receive "respite support" from providers in Nebraska. Brief for appellant at 10.

DHHS does not have the authority to unilaterally determine where Paxton should be placed and how he should be treated.

Neb. Rev. Stat. § 43-285 (Reissue 2016) grants broad authority to juvenile courts to make orders which are in the best interests of juveniles under their jurisdiction. Section 43-285(1) provides, in relevant part:

> When the court awards a juvenile to the care of [DHHS], . . . the juvenile shall, unless otherwise ordered, become a ward and be subject to the legal custody and care of [DHHS]. . . . [DHHS] shall have authority, *by and with the assent of the court*, to determine the care, placement, medical services, psychiatric services, training, and expenditures on behalf of each juvenile committed to it.

(Emphasis supplied.)

[4] Through § 43-285(1), the Legislature removed from DHHS complete control of minors whose care was given to DHHS under the juvenile code. See *In re Interest of Veronica H.*, 272 Neb. 370, 721 N.W.2d 651 (2006). Pursuant to § 43-285, the juvenile court has the authority to assent to and dissent from decisions of DHHS with respect to what care, placement, services, and expenditures are in the best interests of juveniles under its care and custody. *In re Interest of Veronica H., supra.* We agree with the juvenile court's exercise of that authority here.

Paxton has previously struggled with transitions from residential treatment facilities to his parents' home. In light of this history and the recommendations of a psychologist, the juvenile court, after its July 2017 review hearing, ordered DHHS to provide Paxton with various support and mental health services *immediately* upon his discharge from KidsTLC. DHHS personnel were aware of the specific services and the urgency required. Yet as of the date of the hearing at issue, 11 days after Paxton's discharge from KidsTLC, DHHS had not arranged for these services to be provided to Paxton. By contrast, the KidsTLC transition program was identified as ready and available to assist Paxton in transitioning home. Given Paxton's undisputed need for immediate services and

the fact that KidsTLC was the only identifiable provider of such services at the time of the hearing, we agree that it was in Paxton's best interests to participate immediately in the KidsTLC transition program.

DHHS' argument that Paxton would be better served by respite care provided locally does not alter our conclusion. This argument hinges on the faulty premise that local respite care was an available alternative as of the hearing on this matter. But the juvenile court was not presented with a choice between the transition program at KidsTLC and ideal or even functioning local respite care. Its options were to direct that Paxton immediately receive transition services, which all agree he urgently required, at KidsTLC, or to allow him to continue to go without services until DHHS could arrange for them to be provided locally. Faced with those alternatives and aware of Paxton's history, we do not hesitate to find that the juvenile court acted in Paxton's best interests.

[5] Neither are we moved by DHHS' contention that, in the long term, Paxton would be better served by local care than care provided at KidsTLC. On this point, there actually appears to be some agreement among everyone involved that, at some time, it would be best for Paxton to leave the KidsTLC program and receive any necessary care locally. But the question of Paxton's long-term participation in the KidsTLC program was not presented to or decided by the juvenile court in the order under appeal. Appellate courts will not consider issues on appeal that were not presented to or passed upon by the trial court. *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003).

The juvenile court's statement that it was in "everyone's best interest" that Paxton eventually receive local services, as well as its stated willingness to continue to monitor whether services at KidsTLC are necessary, strongly suggests that the juvenile court is open to considering, presumably with the aid of new evidence, whether it remains in Paxton's best interests to receive services at KidsTLC. This court, however, is not the

place for that decision to be made in the first instance. We are limited to reviewing the decision of the juvenile court based on the record available to us. Having performed that review, we find no basis to disagree with the juvenile court.

## CONCLUSION

Upon our de novo review of the record, we conclude that the juvenile court did not err in ordering DHHS to arrange and pay for Paxton to receive services at KidsTLC. Accordingly, we affirm.

Affirmed.