Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/22/2019 08:09 AM CST

In re Interest of Mercedes L. et al.,
children under 18 years of age.
State of Nebraska, appellee, v. Angaline L.,
appellant, and Oglala Sioux Tribe and
Winnebago Tribe of Nebraska,
intervenors-appellees.

___ N.W.2d ___

Filed January 15, 2019.    Nos. A-17-1281 through A-17-1286.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Juvenile Courts: Jurisdiction: Appeal and Error.** In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
3. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken.
4. **Juvenile Courts: Parental Rights: Final Orders: Appeal and Error.** Juvenile court proceedings are special proceedings, and an order in a juvenile special proceeding is final and appealable if it affects a parent's substantial right to raise his or her child.
5. **Final Orders: Words and Phrases.** A substantial right is an essential right, not a mere technical right.
6. **Juvenile Courts: Parental Rights: Parent and Child: Time: Final Orders.** Whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed.
7. **Juvenile Courts: Judgments: Parental Rights.** A review order in a juvenile case does not affect a parent's substantial right if the court

- 738 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

adopts a case plan or permanency plan that is almost identical to the plan that the court adopted in a previous disposition or review order.

8. **Juvenile Courts: Judgments: Appeal and Error.** A dispositional order which merely continues a previous determination is not an appealable order.

9. **Juvenile Courts: Appeal and Error.** The appealability of an order changing the permanency objective in a juvenile case is a fact-specific inquiry.

10. **Juvenile Courts: Adoption: Child Custody.** A juvenile court, except where an adjudicated child has been legally adopted, may always order a change in the juvenile's custody or care when the change is in the best interests of the juvenile.

11. **Juvenile Courts: Parental Rights.** The foremost purpose and objective of the Nebraska Juvenile Code is the protection of a juvenile's best interests, with preservation of the juvenile's familial relationship with his or her parents where the continuation of such parental relationship is proper under the law. The goal of juvenile proceedings is not to punish parents, but to protect children and promote their best interests.

12. **Juvenile Courts: Jurisdiction: Child Custody.** Once a child has been adjudicated under Neb. Rev. Stat. § 43-247(3) (Reissue 2016), the juvenile court ultimately decides where a child should be placed. Juvenile courts are accorded broad discretion in determining the placement of an adjudicated child and to serve that child's best interests.

13. **Juvenile Courts: Minors: Proof.** The State has the burden of proving that a case plan is in the child's best interests.

14. **Appeal and Error.** Appellate courts will not consider issues on appeal that were not presented to or passed upon by the trial court.

15. **Juvenile Courts: Jurisdiction: Parental Rights: Appeal and Error.** The continuing jurisdiction of a juvenile court pending appeal from adjudication does not include the power to enter a permanent dispositional order.

Appeal from the County Court for Platte County: Frank J. Skorupa, Judge. Affirmed in part, and in part vacated.

Sharon E. Joseph for appellant.

Breanna D. Anderson, Deputy Platte County Attorney, for appellee.

Jacqueline Tessendorf, of Tessendorf & Tessendorf, P.C., guardian ad litem.

- 739 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

Pirtle, Riedmann, and Welch, Judges.

Per Curiam.

## I. INTRODUCTION

Angaline L. appeals the orders of the county court for Platte County which approved a change in the permanency objective for Angaline and each of her six minor children from reunification to guardianship. Upon our review, we find the court did not err in ordering a change in the permanency objective. For the reasons that follow, we affirm, but we hold that the court's orders of December 12, 2017, appointing a guardian for each of the children are void for lack of subject matter jurisdiction and vacate those orders.

## II. BACKGROUND

In each of these six related cases, consolidated on appeal, Angaline, the mother of the six juveniles involved, appeals from the November 13, 2017, orders of the county court that changed the permanency objective to guardianship. The orders adopted and approved the case plan/court report dated June 13, 2017.

The initial juvenile petitions were filed in July 2015. The petitions alleged that Mercedes L., born in 2000; Makario L., born in 2001; and Geovanny L., born in 2004, had been removed from Angaline's care on three prior occasions and that Ricardo H., born in 2007; Xavier H., born in 2009; and Savannah L., born in 2011, had been removed from Angaline's care on two prior occasions. The petitions further alleged:

> That the reason[s] the children were not safe in Angaline's care in 2012 and 2014 were that Angaline was suspected to be abusing methamphetamine as well as prescription drugs; that Angaline was not taking proper care of her children, especially Xavier and Geovanny, who have special medical needs; that Angaline was not ensuring the children were receiving a proper education by attending school on a regular basis and that Angaline allowed her

- 740 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

mother . . . to provide care for her children while under
the influence of methamphetamine.

The petitions also alleged that Angaline's children "had been
in the Oglala Sioux Tribal Court's jurisdiction and custody and
that due to Angaline's lack of cooperation with services the
Tribal Court . . . terminated their involvement with Angaline
and her children."

The children remained in Angaline's care until August 2015,
when she was sentenced to a term of incarceration on charges
of child abuse and neglect. The children were placed in two
separate foster homes.

Amended petitions were filed on November 23, 2015, to add
allegations regarding Angaline's incarceration. A "Notification
of Termination of Tribal Jurisdiction" was filed for each child
on December 7, and they included the tribal court order
vacating jurisdiction filed on June 18. The tribal court order
stated that, due to Angaline's lack of compliance, the Oglala
Sioux Tribe vacated jurisdiction over the minor children and
returned jurisdiction to "the State where they can better assist
the family."

At a hearing on December 9, 2015, the guardian ad litem
presented evidence from a designated federal Indian Child
Welfare Act (ICWA) specialist, who is a member of the Oglala
Sioux Tribe. He was qualified as an expert witness regard-
ing ICWA and testified without objection from Angaline. The
ICWA specialist stated, based on his knowledge of the cases
and Angaline's current situation, "I believe at this time that
the children would be at risk of harm and further neglect" if
returned to Angaline's home. He testified that sibling visits
and visits with Angaline at the prison, if allowed by the prison,
would be considered active efforts. He also testified that a
search for suitable families available for placement had been
made based upon the information Angaline had provided to
the tribe.

The court found, based upon the ICWA specialist's testi-
mony, that there had been a diligent search for placement with

- 741 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

relatives and that the State had shown by clear and convincing evidence there was good cause to deviate from the placement preference. The court found that active and ongoing efforts for reunification included case management, family support services, foster and kinship placement, a foster care specialist, and clothing vouchers. The court "specifically" found that the Department of Health and Human Services (DHHS) "is making active efforts."

The children were adjudicated as children within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2015). The journal entry and orders of December 9, 2015, reflect an agreement that, should Angaline plead no contest to the amended petitions, the State and the guardian ad litem would not file for termination of parental rights on the basis of out-of-home placement within 10 months of Angaline's sentencing date, as long as Angaline remained eligible for parole on October 5, 2016.

The Winnebago Tribe of Nebraska filed a notice of intervention on December 17, 2015, with regard to Makario. The tribe remained a party to this case, but expressed no desire to transfer jurisdiction. The tribe requested updates from DHHS, and court reports were sent to its office.

At a hearing on February 22, 2016, the court received a case plan/court report prepared on January 25 as exhibit 1. Exhibit 1 contains a recommended permanency objective of reunification. The court adopted the case plan/court report and ordered the parties to comply with the case plan.

At a hearing on July 18, 2016, the court received a case plan/court report prepared on July 11 as exhibit 2. Exhibit 2 contains a recommended permanency objective of reunification, and the plan was adopted. The court specifically found that DHHS "is making active efforts to reach the permanency objective previously ordered by the Court." Active and reasonable efforts included case management, foster and kinship placement, foster care support, family support services, supervised visitation, and therapeutic services.

- 742 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

At a hearing on January 9, 2017, the court received a case plan/court report prepared on December 29, 2016, as exhibit 3. Exhibit 3 contains a recommended permanency objective of reunification with a concurrent plan for guardianship. The court accepted and approved exhibit 3 and specifically found that DHHS "is making active efforts to reach the permanency objective previously ordered by the Court and all parties are ordered to comply with the case plan/court report."

At a hearing on April 10, 2017, the court found that "[a]ctive efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family; those efforts, at this time, have been unsuccessful." Active efforts included home visits, family assessments, case management, family support services, parenting time, therapy, and Medicaid. The guardian ad litem stated that she had seen improvement in Angaline's attitude. She offered an opinion that "a guardianship would be good as long as there's continued relationship with the children, but the kids are old enough that they want to be around their mom and I think that's important."

On June 22, 2017, the Oglala Sioux Tribe filed a motion to transfer jurisdiction and dismiss and a motion to intervene. The court set a hearing on the motions for July 11. At the hearing on July 11, the attorney representing the tribe requested time to confer with the tribe and determine what it's position was on the motion to transfer jurisdiction, in light of the evidence that "the children were not in favor of a transfer." The hearing was continued to August 8, at which time the tribe withdrew the motion to transfer jurisdiction.

At the August 8, 2017, hearing, the court received the June 13 case plan/court report as exhibit 4. Exhibit 4 contains a recommended change in the permanency objective from reunification with a concurrent plan for guardianship to a recommendation of guardianship. Angaline objected to the change in the permanency objective. The court ordered placement to continue with DHHS and found that reasonable

- 743 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

and active efforts included case management, family team meetings, home visits, Medicaid, family support, drug testing, parenting time, safety planning, referrals to providers for evaluation, and "contact with the tribe." The court found that DHHS has made reasonable efforts toward the permanency goal.

On August 10, 2017, the guardian ad litem filed petitions for appointment of a permanent guardian for each child. The court set a hearing to take up the petitions for appointment and Angaline's objection to the change in the permanency objective.

Hearings took place on October 24, October 31, and November 8, 2017. An email from a representative of the Oglala Sioux Tribe was offered and received as exhibit 5. The email granted permission for the State to make the affirmation on the record that the tribe supported the State's plan for guardianship.

Lynda McCullough, a child and family services specialist with DHHS, is the case manager for Angaline and the minor children. She testified that the children have continuously been in the custody of DHHS since April 2015. At the time of the hearing, all of the children resided with the same foster family. Three of the children have been placed with the current foster family since 2015, and the other three have been placed with the current family since 2016. She testified that it is the recommendation of DHHS that the children achieve "permanency of guardianship" with the foster family.

McCullough testified that there have been some problems reported to her with regard to Angaline. On one occasion, Angaline told Ricardo to cancel plans to attend a friend's birthday party, because she planned to have a birthday party for Ricardo. Angaline "did not produce the party [as] promised," and the foster family reported that he had been "crushed." He was disappointed that he had missed his friend's birthday party and that he did not have his own. Angaline testified that she did not make Ricardo stay home from the birthday party,

- 744 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

but, rather, Ricardo told her he had not wanted to attend the friend's birthday party and did not know how to tell his foster mother, so Angaline helped him.

McCullough testified that there was some concern that Angaline was not adequately caring for the children's specific medical needs. Xavier has a condition called necrotized enterocolitis that resulted in the removal of part of his intestine. Xavier has a feeding tube, and because of his compromised digestive system, he is unable to process sugars properly. He is limited to 6 grams of sugar per day and can have serious complications if he consumes more than that amount. Xavier has made progress while in the care of the foster family, to the extent that he may be able to have the feeding tube removed.

Concerns were raised by the guardian ad litem and the court at the hearings in January and April 2017 that Angaline was not careful enough with regard to the foods that were provided to Xavier at visits. As a result, Xavier became ill upon his return to his foster home. McCullough testified on October 24 that Angaline texted the foster mother on one occasion to inform her that "Xavier will be having sugar at my home this weekend." McCullough testified that Angaline had said she would let Xavier have sugar "when she got him back." McCullough considered this a safety concern, because it showed a lack of concern for Xavier's health. There were no reports of concerns regarding Xavier's sugar intake after September 2017.

McCullough testified that Angaline participated in therapy "occasionally," until the end of April 2017, then she had stopped attending. The therapist told McCullough that therapy was no longer appropriate because of Angaline's inconsistency in attending. Angaline testified that she spoke to the therapist and that she was under the impression she could return to therapy after "[her] grandma was better." Her grandmother passed away in the end of May 2017, and another grandmother passed away in June 2017. There was no evidence

- 745 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

that Angaline attempted to return to therapy after April 2017. Angaline testified that she enrolled in some outpatient classes to work on parenting skills and anger management. She completed counseling services, but the counselor was no longer approved by DHHS.

Angaline worked at a fast-food restaurant for 6 or 7 months, and McCullough confirmed her employment. Since then, Angaline has reported doing work for various employers, but she has not responded to McCullough's request for a pay stub or a verification from her employer. On November 8, 2017, Angaline testified that she applied for a factory job, but if it did not work out, she has a friend who would give her a job at a gas station.

Angaline tested positive for opiates on August 14, 2017, and she did not report taking a prescription drug that would account for the positive test. Angaline did not participate in drug testing during the month of September 2017. If a parent does not participate in testing, it is considered to be a positive test. Angaline testified that she had missed testing in September because she had been out of town for work. Angaline agreed to drug testing at the October 24 hearing and tested negative for controlled substances. She testified that she has been sober since December 2011.

At the time of the hearing, Angaline was approved and scheduled for visits for 20 hours per week, which took place on Saturdays and Sundays. McCullough testified that there is some "friction" between Mercedes and Angaline at visits. She said Angaline has "had some good days, she's had some bad days" with regard to visits. She said there have been some days when the children do not want to attend visits because they have activities or field trips planned. McCullough said Angaline tells the children, "Remember if you don't want to do the family activities, don't even bother coming." McCullough said that typically during visits, the children watch television, "play[] games on their phones," sleep, and occasionally play outside.

- 746 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

Angaline testified that during visits, Mercedes and Makario like to sleep or spend time by themselves. She asks the younger children to help prepare lunches, and they play sports, build forts, read books, and do other activities. She tries to set aside one-on-one time with the younger children. She testified that her family support worker suggested notifying the children, specifically Mercedes and Makario, when there would be a family activity planned for the next day and that they had the option of doing the planned activity or opting not to come to the visit.

A family support worker testified that on an average day at a visit, the children would come into the house, hug Angaline, and separate and "do their own thing." He said that Angaline spends time with each child and that he has seen her use appropriate discipline and take steps to make sure only appropriate individuals are present during visits.

McCullough testified that the children are involved in a variety of activities with the support of the foster family. Such activities include 4-H, wrestling, football, dance classes, and "circle time" with the Ponca Tribe. Mercedes decided to forgo some of her former activities, because she wanted more free time to focus on her job at a fast-food restaurant. The children all help "gather eggs from the chickens" and "care [for] the animals" at their foster home.

The children's foster mother testified that she and her husband requested appointment as guardian of each of the six children. She stated that they have the means to provide proper housing and food for the children and that the children would be able to regularly attend school and participate in activities. She testified that she would be willing to allow the children to visit with Angaline if a guardianship was established and that she would encourage a relationship between the children and Angaline.

McCullough stated that since she became involved with the family, she has observed "very little" progress, and that she was not in a position to recommend that the children be placed

- 747 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

with Angaline. She stated her belief that the children are in need of permanency and that permanency can be achieved through a guardianship with the foster family.

A representative from the Winnebago Tribe of Nebraska stated that the tribe would stand by the position asserted in an affidavit filed on September 18, 2017. The representative stated the affidavit expressed the tribe's approval of a guardianship for Makario.

Angaline testified that Mercedes had asked her to sign guardianship papers and that Makario had told her at one time to sign and at another time that he did not want her to sign them. She stated that it is not her desire for the children to be in a guardianship, because she believes she is able to care for the children.

The court asked Mercedes and Makario to give their thoughts on a potential guardianship. Mercedes said, "I consent to it; I agree. I think the kids would be better off. I mean I'm graduating this year so it doesn't really affect me that much." When asked, "What do you think about a guardianship?" Makario responded, "I'd like that." Both children expressed a desire to maintain contact with Angaline.

On November 13, 2017, the court filed an order for each child overruling Angaline's objection to the permanency objective of guardianship and finding by clear and convincing evidence that it was in the best interests of each child that the proposed change in the permanency objective be approved. In its orders, the court set a hearing on the guardian ad litem's petitions for appointment of a guardian for each child to take place 2 weeks later on November 27. On November 27, the day of the hearing for appointment of a guardian, Angaline filed in each case an "Objection to Guardianship." The court conducted the hearing on November 27, and the cases were taken under advisement.

Prior to the court ruling on the guardian ad litem's petitions for appointment of a guardian for each child, Angaline filed a notice of appeal in each case on December 11, 2017. Each

- 748 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

notice of appeal stated that she was giving notice "of her intention to appeal the order imposed upon her in this matter, to the Court of Appeals of Nebraska. Final Order in this matter was filed on November 13, 2017."

A hearing was held on December 12, 2017. On that day, the court filed orders specifically appointing an individual, the foster father, as permanent guardian of each of the children. The orders delineated the specific responsibilities of the guardian and relieved DHHS of the responsibility of supervising the placement of the children.

## III. ASSIGNMENTS OF ERROR

Angaline asserts the county court erred in changing the permanency objective to guardianship. She also asserts the court erred in appointing a guardian for the children, arguing that the court did not adhere to the requirements of ICWA and the Nebraska Indian Child Welfare Act (NICWA).

## IV. STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Jaydon W. & Ethan W.*, 25 Neb. App. 562, 909 N.W.2d 385 (2018).

## V. ANALYSIS

### 1. Jurisdiction

[2-4] In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *In re Interest of Jaydon W. & Ethan W., supra*. For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken. *Id.* Juvenile court proceedings are special proceedings, and an order in a juvenile special proceeding is final and appealable if it affects a parent's substantial right to raise his or her child. *Id.* Thus, if the juvenile court's orders

- 749 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

changing the permanency objective affected Angaline's substantial right to raise her six children, the orders were final and appealable. But if the orders did not affect a substantial right, we lack jurisdiction and must dismiss the appeals.

[5-8] A substantial right is an essential right, not a mere technical right. *In re Interest of Jaydon W. & Ethan W., supra.* Whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed. *Id.* A review order in a juvenile case does not affect a parent's substantial right if the court adopts a case plan or permanency plan that is almost identical to the plan that the court adopted in a previous disposition or review order. *Id.* Thus, a dispositional order which merely continues a previous determination is not an appealable order. *Id.*

On January 18, 2018, this court issued an order to show cause because it was not clear whether the November 13, 2017, orders were final and appealable. In her response, Angaline argued that a substantial right was affected because the November 13 orders did not contain a plan to assist in her rehabilitation or to reunite her with her children and because the December 12, 2017, orders established a guardianship. On February 9, 2018, we ordered the case to proceed, reserving the issue of jurisdiction for later determination.

The parties addressed the issue of whether the juvenile court's November 13, 2017, orders changing the permanency objective to guardianship were final, appealable orders. The State and the guardian ad litem contend that the orders did not affect a substantial right and, as such, they are not final, appealable orders and that this court lacks jurisdiction over this appeal. Conversely, Angaline contends:

> Additionally, there was no continuing plan to allow or assist [Angaline] in rehabilitation to reunite with her children in the case plan of June 13, 2017, in the order of November 13, 2017 changing the permanency goal

- 750 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

to guardianship with no concurrent goal for reunification, or in the order of December 12, 2017 granting the guardianship. Thus, the substantial right of [Angaline] to parent her children is affected and is a final appealable order.

Brief for appellant at 5.

We note that in Angaline's statement of jurisdiction in her brief, she asserts she "filed a timely Notice of Appeal on December 13, 2017." Brief for appellant at 5. However, in each case the file stamp indicates that the notice of appeal and motion and affidavit to proceed in forma pauperis were efiled in the Platte County Court on the afternoon of December 11. The notices of appeal state, "Final Order in this matter was filed on November 13, 2017."

At oral argument, the parties indicated that the notices of appeal were filed December 12, 2017. The court asked the parties if they would be willing to enter into a stipulation agreeing to such, and they indicated that they would. A stipulation was subsequently filed with this court; however, after reviewing the record, we find in each case that the notice of appeal and motion and affidavit to proceed in forma pauperis were efiled by Angaline on December 11.

Angaline encourages this court to consider the county court's orders of December 12, 2017, in determining that the November 13 orders are final. The December 12 orders were issued after the notices of appeal were filed, and therefore, they do not control the jurisdictional question in these cases, which is whether the November 13 orders are final. See, generally, *Tilson v. Tilson*, 299 Neb. 64, 907 N.W.2d 31 (2018). Upon our review, we find Angaline appealed from the orders of November 13, not the orders of December 12. For the sake of completeness, we note that the December 12 orders were issued after Angaline filed her notices of appeal. If the November 13 orders were not final orders, then Angaline failed to perfect appeals from the December 12 orders within 30 days as required by Neb. Rev. Stat. § 25-1912(1) (Reissue 2016).

- 751 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

If the November 13 orders were final orders, then we must address whether the court had jurisdiction to appoint a guardian as it did in its December 12 orders.

We must first determine whether the November 13, 2017, orders, standing alone, are final and appealable. The appealability of an order changing the permanency goal is not always clear. In *In re Interest of Tayla R.*, 17 Neb. App. 595, 767 N.W.2d 127 (2009), the mother appealed from a review order in which the permanency objective had changed from reunification to adoption. This court stated that, in determining whether this provision affected a substantial right of the mother, a pertinent inquiry was whether there was still a plan allowing her to take steps to reunite with the children. We also observed that the new order contained the same services as the previous order, it did not change the mother's visitation or status, and it implicitly provided the mother an opportunity for reunification by complying with the terms of the rehabilitation plan. We found the order did not affect a substantial right, and the appeal was dismissed for lack of a final, appealable order.

In *In re Interest of Diana M. et al.*, 20 Neb. App. 472, 825 N.W.2d 811 (2013), the order modifying the permanency plan objective was coupled with an order ceasing further reasonable efforts to bring about reunification. Thus, the court found the order was appealable.

The Nebraska Supreme Court has also based its analysis of appealability, not just on the language of the order, but also on an examination of the colloquy between counsel and the trial judge at the hearing. See *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015). In *In re Interest of Octavio B. et al.*, the Supreme Court found the "juvenile court's statements from the bench essentially eviscerated the opportunity to achieve reunification." 290 Neb. at 598, 861 N.W.2d at 423. The Supreme Court was swayed by the court's statement relieving DHHS from providing services to the mother that were inconsistent with the new permanency goals.

- 752 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

[9] Nebraska case law demonstrates that the appealability of an order changing the permanency objective in a juvenile case is a fact-specific inquiry. Accordingly, we have reviewed the case plans, proceedings, and orders of the county court to determine whether the November 13, 2017, orders affect a substantial right in a special proceeding.

The case plan dated December 29, 2016, includes a "Caregiver Plan," which includes listed priorities based upon the identified needs of the family. Each priority listed includes a goal, strategies by which the parent will achieve the goal, services which will be provided, and a summary of the parents' progress toward the goal. The goals identified for Angaline include providing a safe and stable living environment and learning to effectively parent her children based upon their developmental and emotional needs. The June 13, 2017, case plan, which was adopted by the court in its November 13 orders, does not include a similar "Caregiver Plan."

The June 13, 2017, court report/case plan states that Angaline is authorized 20 hours of visitation per week. The report states, "It is respectfully recommended that supervised visitations be ended upon completion of the Guardianship and that [the proposed guardians] monitor and agree to visitations with [Angaline] as they deem appropriate and at the recommendation of the children's therapists." It is not clear in the June 13 plan what, if any, additional services are being provided or will continue to be provided upon adoption of the plan. However, the absence of a clear plan for Angaline weighs in favor of a finding that the adoption of this case plan affects a substantial right. The case plan also includes a section titled "Additional Recommendations," which states, "[DHHS] respectfully recommends to the Juvenile Court of Platte County the establishment of the Guardianship and dismissal of DHHS from the case."

In adopting the June 13, 2017, case plan in its November 13 orders, the court found, "The evidence is clear and convincing that it is in the best interest of the minor child that

- 753 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

the permanency goal of guardianship should be approved." There was no order ceasing further reasonable efforts at that time and no specific finding at the hearing or in the orders that DHHS was being dismissed from the cases at that time. However, the November 13 orders set a hearing on the guardian ad litem's petitions for appointment of a guardian for each child for November 27, approximately 2 weeks later. Therefore, Angaline was provided very little time for rehabilitation if she hoped to avoid the appointment of a guardian for her children.

Upon our de novo review of the record, we find the November 13, 2017, orders essentially eviscerated Angaline's opportunity to achieve reunification and, therefore, affected a substantial right. Thus, we hold that the court's November 13 orders were final and appealable.

## 2. Change of Permanency Plan

Angaline first asserts the court erred by finding in its November 13, 2017, orders that it was in the children's best interests to change the permanency plan from reunification with a concurrent plan for guardianship to guardianship only. Specifically, Angaline asserts the State failed to provide that she is unfit and unable to rehabilitate herself such that active efforts toward reunification are not needed and a guardianship is appropriate.

[10-13] Our Supreme Court has held that "[a] juvenile court, except where an adjudicated child has been legally adopted, may always order a change in the juvenile's custody or care when the change is in the best interests of the juvenile." *In re Interest of Samantha L. & Jasmine L.*, 286 Neb. 778, 786, 839 N.W.2d 265, 271 (2013). Further, the Supreme Court has stated:

The foremost purpose and objective of the Nebraska Juvenile Code is the protection of a juvenile's best interests, with preservation of the juvenile's familial relationship with his or her parents where the continuation of

- 754 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

such parental relationship is proper under the law. The goal of juvenile proceedings is not to punish parents, but to protect children and promote their best interests. Once a child has been adjudicated under § 43-247(3), the juvenile court ultimately decides where a child should be placed. Juvenile courts are accorded broad discretion in determining the placement of an adjudicated child and to serve that child's best interests. The State has the burden of proving that a case plan is in the child's best interests.

*In re Interest of Octavio B. et al.*, 290 Neb. 589, 599-600, 861 N.W.2d 415, 424 (2015).

In the November 13, 2017, orders, the county court noted that poor progress was being made to alleviate the causes of the out-of-home placements and listed factors which weighed in favor of a change in the permanency objective. The court mentioned instability in Angaline's life, specifically the fact that since Angaline's release from incarceration, she has not demonstrated that she can maintain employment or a stable home for the children. The court also considered the length of time the children had been in foster care and their successes in school and extracurricular activities while living in a stable environment. The court considered the stated desire of the oldest two children for guardianship and the Oglala Sioux Tribe's agreement with the permanency goal of guardianship. The Winnebago Tribe of Nebraska approved of a goal of guardianship for Makario, the only child in this case who is an enrolled member.

The record shows that DHHS became involved with Angaline and the children in July 2015 and that the children have been in out-of-home placement since August 2015, when Angaline became incarcerated for child abuse and neglect. Since then, DHHS has provided the family with services, including family support, parenting time, foster care, family team meetings, safety planning, Medicaid, family therapy and counseling, case management, and referrals to providers

- 755 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

for evaluations. Angaline's goals included: (1) providing a safe and stable living environment; (2) maintaining a home residence and full-time employment; (3) providing for the children's basic daily needs, as well as Xavier's and Geovanny's special needs; (4) caring for her own mental health needs; (5) refraining from the use of drugs and alcohol; (5) not allowing illegal activity or drug users in the home; and (6) learning to effectively parent her children based on their developmental and emotional needs.

Angaline has not demonstrated sufficient progress toward the goal of reunification. The record shows that Angaline has struggled with caring for the specific medical needs of at least one child and that family therapy has been discontinued due to Angaline's lack of consistency in attending the sessions. Despite Angaline's participation in some court-ordered services, she has demonstrated she is either unwilling or unable to make the necessary changes in her life. Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Octavio B. et al., supra.* Upon our de novo review, we find it was in the children's best interests to change the permanency objective to guardianship. Thus, the county court did not err in changing the permanency objective to a plan for guardianship after over 2 years of reasonable and active efforts yielded little progress.

### 3. Compliance With ICWA and NICWA

#### (a) Appointment of Guardian
#### Without Expert Testimony

Angaline next asserts the court failed to comply with ICWA and NICWA by finding that there had been active efforts toward reunification despite the lack of testimony by a qualified expert witness. Specifically, Angaline asserts the court erred in appointing a guardian for each child despite the lack of expert witness testimony, as required by ICWA and NICWA.

- 756 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

[14] Angaline appealed from the November 13, 2017, orders that changed the permanency objective from reunification to guardianship. She did not appeal from the December 12 orders where the court appointed the guardian. To the extent that Angaline argues that appointment of a guardian was in error, we decline to address this issue because it does not relate to the November 13 orders, from which she appealed. See *In re Interest of Paxton H.*, 300 Neb. 446, 915 N.W.2d 45 (2018) (appellate courts will not consider issues on appeal that were not presented to or passed upon by trial court). That said, as noted above, the court's December 12 orders were issued after Angaline perfected her appeals from final orders rendering those orders null.

### (b) Active Efforts

Angaline next argues that the court erred when "the lower court relieved the State of the responsibility to provide active efforts to reunify the family." Brief for appellant at 27-28. We understand this argument as being in reference to the change in permanency objective and not in reference to the appointments of guardian on December 12, 2017. Angaline argues that the State failed to prove that she was unfit and unable to rehabilitate herself such that active efforts toward reunification were not needed and guardianships were appropriate and in the best interests of the minor children. Angaline further argues that the State "failed to make active efforts to reunify the Indian Family throughout the entire case." *Id.* at 28.

Neb. Rev. Stat. § 43-1505(4) (Reissue 2016) provides:

Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under state law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family . . . and that these efforts have proved unsuccessful.

We first note that the November 13, 2017, orders neither sought to effect the foster care placement of or termination

- 757 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

of parental rights of Angaline. Her children were already placed with foster parents, and the orders dealt only with the change in permanency objective. Assuming without deciding that § 43-1505(4) applies to a change in permanency objective, upon our de novo review of the record, we find that active efforts had been made but that Angaline did not demonstrate sufficient progress toward a goal of reunification. Throughout the pendency of this matter, the court routinely reviewed the case plan/court reports prepared by DHHS, which were offered and received at the review hearings. Angaline did not object at any point to contest the State's position that active efforts were being made. The court specifically found on December 9, 2015, and July 18, 2016, as well as January 9, April 10, and August 8, 2017, that active efforts were, in fact, being made. The court often listed the efforts that were provided, which included family support, parenting time, foster care, family team meetings, safety planning, Medicaid, family therapy and counseling, case management, and referrals to providers for evaluations.

Angaline argues that the State ceased to provide active efforts "by April, 2017, if not before." Brief for appellant at 34. She argues that, although she was approved for approximately 20 hours of visitation each week, McCullough did not "enforce visitation" and allowed the children to attend other activities during the time designated for visits. Brief for appellant at 34. The record shows that the children were not forced to attend visits, but, rather, the foster family encouraged a relationship between the children and Angaline. The record shows the children are active in school, church activities, and sports, so they were not always able to attend visits. Angaline was asked, "And you completely understand if they have sporting events that they might miss the visits?" She responded "Yeah. I normally try to attend those things." Further, Angaline acknowledged that she told the children that if they did not want to participate in family activities which would take place during visits, they could opt out of attending. Visits and family

- 758 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

support services were still being provided at the time of the hearing on Angaline's objection to the change in the permanency objective.

Angaline also argues that DHHS "refused her a gas voucher for counseling." Brief for appellant at 35. The evidence shows that Angaline requested a gas voucher from the caseworker, but it was not requested far enough in advance to comply with DHHS rules. The record shows that Angaline was told that the caseworker could make arrangements for transportation, but there was not enough time to generate a gas voucher. The caseworker stated that Angaline was aware that requesting a gas voucher 48 hours in advance was a requirement. On that occasion, the gas voucher was not approved, and Angaline never asked for one again. To the extent that Angaline's argument is predicated upon the one incident that a gas voucher was refused, this argument is without merit.

The evidence shows that Angaline stopped attending counseling regularly in April 2017, at which time the therapist recommended that therapy be discontinued. Angaline testified that she stopped attending due to conflicts with her employment, which was unconfirmed, or due to her grandmother's failing health. There is no evidence that Angaline attempted to return to therapy after April 2017. Angaline did not regularly comply with drug testing, although the services were being provided. There is no evidence that the State "ceased providing active efforts by April, 2017," as alleged by Angaline. Brief for appellant at 34. We find this assignment of error to be without merit.

### (c) December 12, 2017, Orders

[15] As stated earlier in this opinion, the court entered its orders appointing a guardian for each child on December 12, 2017, which was 1 day after Angaline appealed from the court's November 13 orders which we have held to be final orders. Because the court was divested of jurisdiction by those appeals, its orders dated December 12, 2017, are null and void.

- 759 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

See *In re Interest of Becka P. et al.*, 296 Neb. 365, 894 N.W.2d 247 (2017) (continuing jurisdiction of juvenile court pending appeal from adjudication does not include power to enter permanent dispositional order).

## VI. CONCLUSION

Because the county court's orders affected Angaline's substantial right to raise her children, the November 13, 2017, orders were final and appealable. Upon our de novo review, we find the evidence supports the change in the permanency objective from a primary plan of reunification with Angaline, with a concurrent plan of guardianship, to a plan for guardianship only. Because the guardianships were not established until after Angaline's appeals from these orders, we cannot review her assignments of error with regard to the appointment of a guardian for each child; however, we hold that the court's orders of December 12 were null and void and vacate those orders. The November 13 orders of the county court are affirmed.

Affirmed in part, and in part vacated.

Pirtle, Judge, dissenting.

Assuming, for purposes of discussion, that the majority is correct in concluding that the orders appealed from, dated November 13, 2017, were "final, appealable order[s]" as is needed for us to acquire jurisdiction over these appeals, then to that extent, I agree with the analysis of the remaining issues and the result reached by the majority opinion.

However, I believe there is a very serious question under our existing case law and the facts herein whether the November 13, 2017, orders were final orders which affected a substantial right of Angaline. These appeals are somewhat unique because we are dealing with not a termination of parental rights or an adoption, but, rather, issues related to the preparation for and establishment of a guardianship. The November 13 orders approved a change in the permanency objective to guardianship. In the December 12 orders, the court established

- 760 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

a guardianship for each of these six children and appointed a guardian.

Angaline filed her notices of appeal on December 11, 2017, which was 1 day before the orders in which the court established a guardianship for each child and appointed a guardian. That was 28 days after the entry of the November 13 orders. The county court then held an additional hearing and entered additional orders on December 12. No appeals were taken by Angaline following the December 12 orders, yet as the majority points out, Angaline "encourages this court to consider the county court's orders of December 12, 2017, in determining that the November 13 orders are final." As stated by the majority, the December 12 orders "do not control the jurisdictional question in these cases, which is whether the November 13 orders are final."

I agree with the majority that if the November 13, 2017, orders were final, appealable orders, then the hearing and the orders on December 12 would be both null and void, as the county court would have been without jurisdiction following the notices of appeal, which were filed on December 11. This supports the assertion that the December 12 orders cannot be used to determine the finality of the November 13 orders. For the sake of completeness, I would also note that if the November 13 orders were not final, the December 12 orders are not rendered void. See, *Anderson v. Finkle*, 296 Neb. 797, 896 N.W.2d 606 (2017); *In re Guardianship of Sophia M.*, 271 Neb. 133, 710 N.W.2d 312 (2006) (notice of appeal from nonappealable order does not render void for lack of jurisdiction acts of trial court taken in interval between filing of notice and dismissal of appeal by appellate court).

Had Angaline waited until the 30th day to file her appeals, on December 13, 2017, instead of December 11, she could have challenged the change in the permanency objective, as well as the establishment of a guardianship and the appointment of a guardian. She also could have filed separate notices of appeal from the December 12 orders up until January 11,

- 761 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

2018, the 30th day following those orders. If so, assuming the December 12, 2017, orders were final, appealable orders, we could have decided those appeals on the merits, with regard to the establishment of a guardianship and appointment of a guardian.

Because Angaline appealed before the court's December 12, 2017, orders, we cannot reach any issue with regard to the establishment of a guardianship or the appointment of a guardian. Upon a de novo review of the record, I come to a different conclusion than the majority with regard to the finality of the November 13 orders.

This court is often faced with an appeal of an order in a juvenile case in which the court is modifying to some degree the permanency objective for the child prior to actually terminating parental rights or appointing a guardian, as in this case. I agree with the majority that the appealability of such an order is not always clear. See *In re Interest of Tayla R.*, 17 Neb. App. 595, 767 N.W.2d 127 (2009). See, also, *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015).

The transcripts in the instant cases show that on December 12, 2017, the day after Angaline filed her appeals, the county court held another hearing and entered orders explaining some of the rights and duties of the guardian. These orders state that "the guardianship placement shall be considered permanent for the child." Other terms of the guardianship also appear to assume a permanent change in the children's status, such as a provision that the guardianship shall terminate on the child's 19th birthday. In other words, it certainly appears that the juvenile court is not anticipating steps that Angaline could take that would allow her to reunite with the children, and thus, the December 12 orders might be appealable as affecting her substantial rights.

My jurisdiction question stems from whether the terms of the November 13, 2017, orders, in and of themselves, are sufficient to permit this court to find that they are final and appealable. In those orders, the court recounts Angaline's

- 762 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

unsatisfactory history and states that "it is in the best interest of the minor child that the permanency goal of guardianship should be approved." I believe it is at least questionable whether this court could determine, solely from the language in the orders, whether Angaline's substantial rights are affected. However, once the terms of the December 12 orders are reviewed, which, unfortunately, we are not allowed to do, they more clearly could have been final, appealable orders.

I believe these cases are similar to the facts in *In re Interest of Kenneth B. et al.*, 25 Neb. App. 578, 909 N.W.2d 658 (2018). In that case, the separate juvenile court changed the permanency objective from reunification to guardianship. The March 2017 order was silent on services available to the father, but in October 2016, he had been ordered to participate in supervised visitation and family therapy as recommended by the children's therapists, obtain safe and adequate housing, and follow the rules and regulations of his parole. The March order did not explicitly cease services and obligations from the October order. At the March hearing, the juvenile court stated that it was adopting DHHS' recommendations, including that the father continue to receive services and perform his obligations. The court stated, "It is evident that the services, visitation, and obligations the juvenile court previously ordered concerning [the father] were to continue after the March order." *In re Interest of Kenneth B. et al.*, 25 Neb. App. at 586, 909 N.W.2d at 664. We also noted that the juvenile court included "qualifying language during its oral pronouncement at the March 2017 hearing of the permanency objective, saying that '[t]he singular permanency plan in this case *at this time* is one of guardianship.'" *Id.* (emphasis in original). This court found that the use of qualifying language taken together with the juvenile court's ordering that a further review hearing be held in 5 months implies rehabilitation and reunification remained a possibility. We found we were without jurisdiction to review the father's appeal of the March order, and the appeal was dismissed.

- 763 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF MERCEDES L. ET AL.
Cite as 26 Neb. App. 737

In *In re Interest of Diana M. et al.*, 20 Neb. App. 472, 825 N.W.2d 811 (2013), the order modifying the permanency plan objective was coupled with an order ceasing further reasonable efforts to bring about reunification. Thus, the court found the order was appealable. The November 13, 2017, orders contained no such provision. Further, in *In re Interest of Octavio B. et al.*, 290 Neb. 589, 598, 861 N.W.2d 415, 423 (2015), the Nebraska Supreme Court found the court's statements from the bench "essentially eviscerated the opportunity to achieve reunification." Upon our review of the bill of exceptions, there does not appear to be any colloquy between Angaline and the court to the same effect, and there was no specific finding that DHHS was being dismissed at that time.

The Supreme Court has found that orders which do not constitute an adjudicative or dispositive action in the proceedings are not final orders. See *In re Interest of Ezra C.*, 25 Neb. App. 588, 910 N.W.2d 810 (2018), citing *In re Interest of Jassenia H.*, 291 Neb. 107, 864 N.W.2d 242 (2015). In such cases, the court has found that it is without jurisdiction on appeal as no substantial right had been affected.

So here, for the reasons stated above, I seriously question whether the orders entered on November 13, 2017, in and of themselves, affected a substantial right of Angaline, and therefore, I would find that they were not final and appealable orders. On that issue only, I disagree with the majority opinion and I would have concluded we were without jurisdiction to consider these appeals, thus dismissing them. As a result, I respectfully dissent.